**Dr. Clyde D. HAMER, Appellant,**

**v.**

**George J. BROWN, Chancellor, SAU Technical Branch, in his Individual and Official Capacity; Dr. Harold T. Brinson, President, SAU in his Individual and Official Capacity; Gary L. Oden, Vice-Chancellor for Development and Extended Education, SAU, in his Individual and Official Capacity; and members of the Board of Trustees, Mr. Perrin Jones, Chairperson, El Dorado, Mr. William Hand, Secretary, Magnolia, Mr. Rob L. Burns, Magnolia, Ms. Virginia M. Todd, Magnolia, Mr. Roy Ledbetter, East Camden, Appellees.**

**No. 86–2102.**

United States Court of Appeals, Eighth Circuit.

Submitted April 17, 1987.

Decided Oct. 27, 1987.

1399

John Wesley Hall, Jr., Little Rock, Ark., for appellant.

Teresa Wineland, El Dorado, Ark., for appellees.

Before McMILLIAN, Circuit Judge, BRIGHT, Senior Circuit Judge and MAGILL, Circuit Judge.

McMILLIAN, Circuit Judge.

Dr. Clyde D. Hamer appeals from a final judgment entered in the District Court[1] for

1. The Honorable Oren L. Harris, United States Senior District Judge for the Western District of Arkansas.

the Western District of Arkansas in favor of Dr. George J. Brown, Chancellor of Southern Arkansas University–Technical Branch (SAU–Tech), other named SAU–Tech administrators in their individual and official capacities, and members of the SAU–Tech Board of Trustees (collectively referred to as SAU–Tech) in a 42 U.S.C. § 1983 civil rights action. Hamer alleged that SAU–Tech violated his constitutional rights when it refused to renew his employment contract because of critical statements he made to an investigating committee. For reversal, Hamer argues that (1) his speech before the committee was constitutionally protected because it involved a matter of public concern and (2) his speech was a substantial or motivating factor in the refusal to renew his contract. We affirm the judgment of the district court, but on grounds different from those relied on by the district court.

Hamer was hired by SAU–Tech in 1978 as director of the Environmental Academy. Later, he was also named director of the Public Administrative and Technical Services Division (PATSD). In February 1982, Hamer was removed as director of the Environmental Academy but continued as director of PATSD.

In March 1982, a committee of the Arkansas Fire Prevention Commission (committee) came to SAU–Tech to investigate complaints made by firefighters who had attended training sessions at the Arkansas Fire Training Academy (AFTA). AFTA is located at and administered by SAU–Tech and provides training to firefighters throughout the state. Allegations of mismanagement of AFTA facilities and misuse of AFTA funds by SAU–Tech prompted the investigation.

The committee asked Hamer to talk with them privately about his perception of problems with the SAU–Tech administration. Hamer told the committee that there was a problem with the way SAU–Tech was using AFTA money; he stated that the SAU–Tech administration was "moving

money around to make the place look nice while technical programs went underfunded." *Hamer v. Brown,* 641 F.Supp. 662, 664 (W.D.Ark.1986). Hamer also told the committee that the SAU–Tech administration indiscriminately fired people that it did not like and then created documents to justify the firing. *Id.*

A day or two after Hamer met with the committee, he was approached in the cafeteria by Vice Chancellor Gary Oden. Oden asked Hamer if he had talked to the committee and what he had said to them. Hamer responded that he did not wish to discuss the matter with Oden. Hamer contends that he was treated less favorably by Vice Chancellor Oden and Chancellor George Brown after they became aware that he had talked to the committee. He concedes, however, that in April 1982 (a month after he spoke with the committee), his contract was renewed for the school year August 1, 1982 to May 31, 1983.[2]

In January and February 1983, several reports critical of the relationship between AFTA and SAU–Tech were issued, including a final recommendation from the committee that AFTA be removed from SAU–Tech. The most serious charge—misuse of funds by the SAU–Tech administration—was not substantiated. On April 29, 1983, Chancellor Brown presented Hamer with a terminal contract for the 1983–84 school year, which provided: "This contract is terminal and will not be renewed beyond the end of the current school year, June 20, 1984." Brown told Hamer the contract was not being renewed because PATSD had a low enrollment and further that PATSD's continued existence depended on program growth and development in the near future.

Enrollment in PATSD had steadily declined from a high of 682 students in 1978–79 to only 152 students in 1982–83. During the same period, overall enrollment at SAU–Tech had increased substantially. 641 F.Supp. at 664. As director of PATSD, Hamer had recruiting responsibilities.

---

**2.** Hamer argues that SAU–Tech did not terminate his contract or offer him a terminal contract at this point because the retaliation would

have been obvious and in violation of SAU–Tech's contract notice provisions.

Hamer contends, however, that SAU–Tech effectively prevented him from enrolling new students in order to justify the refusal to renew his employment and the termination of PATSD. He alleges that he was not provided adequate funds for recruiting, the campus recruiter was instructed not to send follow-up letters to persons interested in PATSD, and Brown ordered that no new students be enrolled in PATSD in the fall 1983 semester. In July 1983, SAU–Tech published an advertisement in which PATSD was omitted from SAU–Tech's program offerings.

Hamer contends that it was standard practice for SAU–Tech to reassign employees whose jobs had been eliminated. On September 23, 1983, Brown met with Hamer and confirmed that Hamer would not be reassigned at SAU–Tech when his contract terminated in June 1984. The decision again was confirmed in a November 4, 1983, letter from Brown to Hamer. Hamer appealed the termination to the president of SAU–Tech and the SAU–Tech Board of Trustees. After a hearing, the Board of Trustees approved the refusal to renew Hamer's contract because of the low enrollment in PATSD.

Hamer then filed this § 1983 action alleging that SAU–Tech refused to renew his contract because of his exercise of his First Amendment rights. The district court, deciding in favor of SAU–Tech, held that "any protection the plaintiff would be entitled to in regard to the statements in question would be outweighed by the interest of defendants in the efficient rendering of educational services." 641 F.Supp. at 667. The district court further held that Hamer had failed to prove that he had been discharged as a result of his speech. The district court concluded instead that Hamer's contract was not renewed because of the low enrollment in PATSD. *Id.* This appeal followed.

■ Public employees are not, by virtue of becoming public employees, shorn of First Amendment protection. *Mt. Healthy City Dist. Board of Education v. Doyle,* 429 U.S. 274, 283, 97 S.Ct. 568, 574, 50 L.Ed.2d 471 (1977) (*Mt. Healthy*); *Perry v.*

*Sindermann,* 408 U.S. 593, 597, 92 S.Ct. 2694, 2697, 33 L.Ed.2d 570 (1972) (*Sindermann*); *Pickering v. Board of Education,* 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968) (*Pickering*). At the same time, it is recognized that the state, as an employer, has a legitimate interest in regulating the speech of its employees. *Pickering,* 391 U.S. at 568, 88 S.Ct. at 1734. In each case, where these interests conflict, the task is to "arrive at a balance between the interest of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the state, as an employer, in promoting the efficiency of the public services it performs through its employees." *Id.*

Courts, in reviewing challenges to discharges based on alleged violations of freedom of speech rights, have applied a three-step analysis. *Bowman v. Pulaski County Special School Dist.,* 723 F.2d 640, 643 (8th Cir.1983) (*Bowman*). A court must determine whether: (1) the plaintiff established that he or she engaged in protected activity, *Pickering,* 391 U.S. at 569–72, 88 S.Ct. at 1735–37, (2) the plaintiff established that the protected activity was a substantial or a motivating factor in the action taken against him or her, *Mt. Healthy,* 429 U.S. at 285–87, 97 S.Ct. at 575–76, and (3) the employer demonstrated that the same action would have been taken in the absence of the protected activity. *Givhan v. Western Line Consolidated School Dist.,* 439 U.S. 410, 416–17, 99 S.Ct. 693, 697–98, 58 L.Ed.2d 619 (1979); *Mt. Healthy,* 429 U.S. at 287, 97 S.Ct. at 576.

In determining whether speech is constitutionally protected, the court must first consider whether the speech involves a matter of public concern. In the present case, the district court held that Hamer's speech was not protected because it involved only internal campus matters, i.e., the administration and facilities at SAU–Tech, and did not concern the general public. 641 F.Supp. at 665.

■ The Supreme Court has held that a public employee's speech is protected activity when he or she speaks "as a citizen upon matters of public concern," but not

**1402**

when he or she speaks "as an employee upon matters only of personal interest." *Connick v. Myers,* 461 U.S. 138, 147, 103 S.Ct. 1684, 1690, 75 L.Ed.2d 708 (1983) (*Connick*). Not all matters which transpire within a government office nor every criticism directed at a public official by a public employee are matters of public concern. *Id.* at 149, 103 S.Ct. at 1691. "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Id.* at 147–48, 103 S.Ct. at 1690–91 (footnote omitted).

> When employee expression cannot be fairly considered as relating to any matter of political, social, or other concern to the community, government officials should enjoy wide latitude in managing their offices, without intrusive oversight by the judiciary in the name of the First Amendment. Perhaps the government employer's dismissal of the worker may not be fair, but ordinary dismissals from government service which violate no fixed tenure or applicable statute or regulation are not subject to judicial review even if the reasons for dismissal are alleged to be mistaken or unreasonable.

*Id.* at 146–47, 103 S.Ct. at 1689–90.

Applying the above principles to Hamer's speech, we hold that the district court erred in holding that Hamer's speech did not relate to a matter of public concern. Hamer's speech related to the expenditure of public funds and the proper functioning of a state-supported entity and his comments were made in response to a request by a committee which was authorized[3] to investigate the relationship between SAU–Tech and AFTA.

■ Having determined that Hamer's speech involved a matter of public concern, next we must balance the interest of Hamer, as a citizen, in commenting upon such matters against the interest of SAU–Tech, as an employer, in rendering efficient educational service through its employees. This court has considered the following factors in making this determination: (1) the need for harmony in the office or the workplace; (2) whether the government's responsibilities require a close working relationship between the plaintiff and co-workers; (3) whether the speech in question has caused or could cause the relationship to deteriorate; (4) the time, manner and place of the speech; (5) the context in which the dispute arose; (6) the degree of public interest in the speech; and (7) whether the speech impeded the employee's ability to perform his or her duties. *E.g., Bowman,* 723 F.2d at 644.

The district court held that the interest of SAU–Tech in the efficient operation of its campus, which required a harmonious relationship between the division directors and the administration, outweighed Hamer's interest in complaining about the administration. Memorandum opinion at 664. The district court further found that Hamer's complaints to the committee impeded his ability to perform his duties. *Id.* We do not agree.

As we held above, the proper expenditure of funds and the implementation of programs by a state educational institution is a matter of public concern and also a matter of public interest. The record reflects that SAU–Tech's administration of AFTA was a matter of public interest and controversy; the presence of an investigating committee is indisputable evidence of this. Hamer's speech was also given at an appropriate time and place and in an appropriate manner. The committee asked Hamer to talk with them privately about his general perception of issues under investigation regarding SAU–Tech's administration and policy. The generality of Hamer's remarks about administration policy was consistent with the purpose for which he was invited to talk with the investigators. We reject SAU–Tech's argument that Ham-

---

**3.** There is dispute concerning the origin and scope of authority of the committee. Hamer contends the governor and state legislature had sanctioned an investigation and that the controversy involved the expenditure of public funds belonging to AFTA. SAU–Tech counters that the committee was not an arm of state government but merely represented the interests of a private organization of fire chiefs.

er's speech was not protected because he spoke about matters and problems for which he did not have responsibility and which had not been brought to the attention of the administration. An employee may not be limited to speaking only about those matters which relate directly to his or her job nor may an employer require an employee to discuss with the employer matters which would otherwise be constitutionally protected before speaking publicly.

■ SAU–Tech insists, however, that Hamer's speech seriously undermined the working relationship between division directors and the SAU–Tech administration. In *Cox v. Dardanelle Public School District,* 790 F.2d 668, 674 (8th Cir.1986), we rejected a similar argument as too broad. We held that a teacher's relationship with a school administrator was not of such a personal and intimate nature that certain forms of criticism of the superior by the teacher would seriously undermine the effectiveness of the working relationship between them. *Id.* There is no evidence in the present case that Hamer's position involved a close personal or intimate relationship with the SAU–Tech administrators. Moreover, from the record it is not clear that Hamer's criticism was directed at his immediate supervisor or at any particular person or persons. While we recognize that even such general criticism may detract from the desired harmony and cohesion in an educational institution, such a result is not sufficient to defeat an employee's interest in speaking out on matters of public concern. *Bowman,* 723 F.2d at 645.

■ We next consider whether Hamer's protected speech was a substantial or motivating factor in the termination of his contract. *Mt. Healthy,* 429 U.S. at 287, 97 S.Ct. at 576. The district court found that the refusal to renew Hamer's contract was because of the decline in PATSD enrollment from 1980 to 1982; this decline occurred prior to March 1982 when Hamer made his statements to the committee. 641 F.Supp. at 667. The district court also found that Hamer had failed to recruit students for PATSD, that the obstacles that Chancellor Brown allegedly placed in the path of increased enrollment in the division occurred after the decision had been made not to renew Hamer's contract, and that no action was taken against Hamer for one year after his statements to the committee. *Id.* at 667–68. The district court also found that Chancellor Brown did not know that Hamer had talked to the committee until the termination appeal process and thus had no reason to retaliate against him. *Id.* at 667.

We hold that the district court did not clearly err in holding that Hamer's speech was not a substantial and motivating factor in the termination of his contract. There was undisputed evidence that there had been a marked and persistent decline in enrollment in PATSD. Hamer's allegations do not explain the enrollment decline because the actions Chancellor Brown allegedly took to obstruct enrollment in PATSD took place after the decision to terminate Hamer's contract had already been made. Although there was disputed evidence that SAU–Tech terminated Hamer at the earliest possible time following his speech, the district court credited the testimony of the SAU–Tech administrators and concluded that Hamer's speech was not a motivating or substantial factor in SAU–Tech's refusal to renew his contract.

Because we hold that Hamer failed to establish a causal relationship between his protected speech and the termination of PATSD and his contract of employment, Hamer's claim that his First Amendment rights were violated must fail.

Accordingly, the judgment of the district court is affirmed.