John W. HOFFMANN, Appellant,

v.

The MAYOR, COUNCILMEN AND CITIZENS OF the CITY OF LIBERTY; and David A. Warm, Individually and as City Administrator and Personnel Officer of the City of Liberty, Mo.; and Ed Collins, Individually and as Chief of Police of the City of Liberty, Mo., Appellees.

No. 89–2390.

United States Court of Appeals, Eighth Circuit.

Submitted April 9, 1990.

Decided June 11, 1990.

Richard Helfand, Kansas City, Mo., for appellant.

Claudia J. York, Kansas City, Mo., for appellees.

Before JOHN R. GIBSON and BOWMAN, Circuit Judges, and FLOYD R. GIBSON, Senior Circuit Judge.

FLOYD R. GIBSON, Senior Circuit Judge.

John Hoffmann was fired from the police force of Liberty, Missouri (the "City"), in 1986. He was later rehired into another position after the City's Grievance Review Board heard his case and ordered rescission of the firing. Hoffmann sued the City under 42 U.S.C. § 1983 (1982) for violation of his first amendment rights, claiming he had been rehired to a lower position as retaliation for his grievance filing. The district court[1] granted summary judgment to the City on the grounds that Hoffmann had failed to argue that any activity of his touching a matter of public concern was the basis for the City's rehiring actions, and thus he had failed to make out a submissible first amendment case. For the reasons explained below, we affirm.

## I. BACKGROUND

The facts of this case are undeveloped because it was resolved by a grant of summary judgment to the City. We construe the record in favor of Hoffmann, drawing all reasonable inferences that support his

---

1. The Honorable Elmo B. Hunter, Senior United States District Judge for the Western District of Missouri.

case. *Mandel v. United States*, 719 F.2d 963, 964 (8th Cir.1983) (subsequent history omitted).

Hoffmann was a police detective in the employ of the City prior to July 3, 1986. On that date he was fired by a notice of dismissal from the acting Chief of Police. The notice reflected that Hoffmann was being dismissed for specific instances of misconduct in three categories: 1) disrespect and abuse of citizens while on duty, 2) incompetent or negligent performance, and 3) insubordination. Appellees' Addendum at 1–4.

Pursuant to the personnel procedures of the City, Hoffmann appealed his dismissal to the Grievance Review Board. The Board heard his case and later issued its decision on December 17, 1986. Its opinion in its entirety reads:

> The Grievance Review Board has reviewed all of the evidence and the briefs submitted by counsel. We have decided that the evidence is not sufficient to warrant dismissal of John Hoffmann. We find that the action taken against him should be rescinded.
>
> The Board heard troubling, credible evidence that Mr. Hoffmann was disrespectful or abusive. In the context of the entire matter, however, that evidence did not justify upholding the decision of termination. This Board takes no position on whether some lesser form of discipline might have been appropriate.

Appendix at 50.

Though a model of brevity, the mandate of the Grievance Review Board leaves room for dispute as to precisely what it is the Board expected the Police Department to do. In some sense, the department was faced with a dilemma—it had to rehire an employee whom it had concluded was no longer fit to be an officer or defy the Review Board. The Board had recognized that there was credible evidence of misconduct on Hoffmann's part, but declined to say whether disciplinary action short of termination was warranted.

The Police Department's efforts to comply with the Board's order produced the following facts. In February of 1987, the department rehired Hoffmann, but only as the Property Control Officer. He was awarded some $10,000 back pay. Although rehired at his salary at the time of dismissal, he is now apparently in a pay grade at which he can no longer obtain increases other than for cost of living; i.e., he has "topped out." He is not permitted to wear the uniform of an officer, work overtime, or work after hours as an officer—all of which he was allowed to do as a detective prior to his firing. Hoffmann was also advised that he need not attend the monthly departmental meetings. As a detective, Hoffmann had been the only member of the force trained in arson investigations. However, after his rehiring he was not permitted to work on arson investigations and is not a member of the newly created arson team. Hoffmann's requests to be transferred back into the rank of detective or even to patrol officer were repeatedly denied.

Hoffmann believes that the circumstances of his rehiring demonstrate retaliatory action on the part of the City designed to humiliate and financially impair him. The City claims that its conditions upon rehiring are only in keeping with its efforts to prevent Hoffmann from coming in contact with the public in order to avoid further problems of abuse on his part which, of course, reflect badly on the Police Department and the City. The district court described Hoffmann's rehired status in the department as "greatly diminished." Memorandum and Order filed July 26, 1989, at 2, Appendix at 87. We agree and suspect that there is truth in both parties' viewpoints, but our review must draw reasonable inferences in Hoffmann's favor. Doing so, we assume that the City's actions were, at least in part, punitive and retaliatory. That assumption does not, however, make out Hoffmann's first amendment case, as we shall endeavor to explain in our discussion of the law.[2]

---

**2.** Much is made by both parties of what motives can be ascribed to the City in the circumstances surrounding its rehiring of Hoffmann. Those motives, whatever they might be, are not ger-

Hoffmann filed this suit under § 1983, suing the Mayor, the City Administrator (in that capacity and his capacity as Personnel Officer and personally), the Chief of Police (in that capacity and personally), the city council members, and the citizens of the city (all of whom we collectively refer to as the "City"). He complained that the actions of the City in his rehiring were retaliatory for his grievance filing and thus violative of the first amendment. He sought damages as well as injunctive relief.

The district court denied the City's Rule 12(b)(6) motion on the grounds that Hoffmann's complaint stated a possible first amendment violation.[3] The case later went to summary judgment consideration on the first amendment question. The district court concluded that the City's actions were permissible under the first amendment because Hoffmann had not argued that his grievance filing was a matter of public concern protected by the first amendment. Memorandum and Order filed July 26, 1989, at 9, Appendix at 94.

## II. DISCUSSION

This case forces our examination of several interesting points of first amendment law, but fortunately requires our resolution of only one question—and solely on the facts of this case. That question is whether Hoffmann's grievance filing sufficiently touched a matter of public concern to be protected conduct under the first amendment. Hoffmann has characterized the issue differently, invoking the petition clause of the first amendment. We begin by responding to that invocation.

■ Hoffmann argues that his conduct in filing a grievance was an exercise of the right to petition the government for re-

dress of grievances and was not an exercise of free speech. The right to petition, he suggests, is equally, if not more, inviolable under the first amendment, and his exercise of the right was the source of the City's retaliatory actions against him. We are unpersuaded, and ultimately conclude that however characterized (as petition or speech) Hoffmann's conduct is subject to the same test to determine whether it is an expression protected under the first amendment.

Nevertheless, Hoffmann's argument merits a brief discussion and presents at least two questions. The first is whether the right to petition is distinct from the right to free speech. The second, if the first is answered affirmatively, is whether Hoffmann's conduct was free speech or an act of petition. Necessarily we begin with a look at the opening salvo from the Bill of Rights.

The first amendment proscribes Congress from making a law "respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. Const. amend. I. Thus, the amendment sets out three categories of protected expression: religion and its practice, speech and its publication, and assembly and petition of the government. All are rights of expression, none more or less so than the others.[4] The district court rejected Hoffmann's attempt to distinguish the right to petition from the other rights of the first amendment. The court's discussion of the question points to several circuit and Supreme Court decisions to support its view. Memorandum and Or-

---

mane if Hoffmann's conduct is not first determined to be an expression protected by the first amendment.

**3.** The district court posited two possible theories of recovery for Hoffmann, procedural due process and the first amendment. The court concluded the former could not obtain because Hoffmann was an at-will employee without a property interest in continued employment under Missouri law, despite the existence of the grievance review procedures. Memorandum

and Order filed Dec. 21, 1988, at 3–6, Appendix at 40–43. That issue is not part of this appeal and we do not consider the district court's views on the matter. The district court did conclude that the complaint could be read to make a first amendment case and accordingly did not dismiss the complaint under Rule 12(b)(6). *Id.* at 44.

**4.** The different uses of the establishment and exercise clauses notwithstanding.

der dated July 26, 1989, at 5–8, Appendix at 90–93. We agree with the district court.

"The right to petition is cut from the same cloth as the other guarantees of [the First] Amendment, and is an assurance of a particular freedom of expression." *McDonald v. Smith*, 472 U.S. 479, 482, 105 S.Ct. 2787, 2789, 86 L.Ed.2d 384 (1985) (petition clause does not provide any greater immunity to defendant charged with libel of public figure than does speech clause). While we recognize that the right of petition can be *exercised* differently from the right of free speech,[5] as the first amendment is implicated in this case, we conclude that the petition clause provides no lesser or greater guarantee of free expression than the speech clause. Thus, we need not determine if (or how) the petition clause is distinct from the speech clause or whether Hoffmann's grievance filing was an act of petition or of speech. As either, it was an expression subject to the same first amendment analysis. *See, e.g., Gray v. Lacke*, 885 F.2d 399, 412 (7th Cir.1989), *cert. denied*, — U.S. ——, 110 S.Ct. 1476, 108 L.Ed.2d 613 (1990); *cf., Brown v. Glines*, 444 U.S. 348, 363 n. 4, 100 S.Ct. 594, 598 n. 4, 62 L.Ed.2d 540 (Brennan, J., dissenting) (1980) ("It may be that the Petition Clause, in some contexts, enhances the protections of the Speech Clause.... [However,] conventional First Amendment analysis amply suffices [here].")

■ That analysis in discharge cases[6] generally runs like this: 1) did the employee show that he or she did something which was speech touching upon public concern thereby making it protected activity; 2) if yes, did the employee then show that the protected activity was a substantial or motivating factor in the employer's action against the employee; and 3) did the employer show that it would have taken the same action absent the protected activity?

*See Hamer v. Brown*, 831 F.2d 1398, 1401–02 (8th Cir.1987). In this case, the threshold question is whether Hoffmann's grievance filing touched upon a matter of public concern.

*Connick v. Myers*, 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983), controls our determination of what conduct is a matter of public concern. The most salient language from the Court seems to be the following:

> We hold only that when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior. [citation omitted] Our responsibility is to ensure that citizens are not deprived of fundamental rights by virtue of working for the government; this does not require a grant of immunity for employee grievances not afforded by the First Amendment to those who do not work for the State.
>
> Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record. [footnote omitted]

*Id.* at 147–48, 103 S.Ct. at 1690–91.

■ The determination of the above issue presents a question of law. *Id.* at 148 n. 7, 103 S.Ct. at 1690 n. 7. What is it that Hoffmann did that could have touched upon a matter of public concern? We can see nothing. He simply prosecuted a grievance complaint pursuant to the City's personnel rules complaining of his dismissal. That filing was wholly personal. He makes no charges that touch any matters

---

**5.** For example, access to the courts by prisoners is generally regarded as an exercise of rights under the petition clause. *See Flittie v. Solem*, 827 F.2d 276, 280 n. 9 (8th Cir.1987) (citing *Harrison v. Springdale Water and Sewer Comm'n*, 780 F.2d 1422, 1427 n. 7 (8th Cir. 1986)).

**6.** The analysis does not change in this case even though Hoffmann does not complain of discharge. Although discharge is ordinarily the form which retaliation takes, it is the retaliation that may be unconstitutional. Thus, if the City's actions are retaliatory, they are potentially unconstitutional, though short of discharge.

that can be even remotely considered to be of interest to the public. He did not raise any issues (for example, favoritism, corruption, or other misfeasance) in which there might be said to be a general public interest or concern. There is no public concern in Hoffmann's grievance filing, hearing, and subsequent reinstatement as represented by this record. The fact that the grievance hearing was open to the public does not alone make the subject of that hearing a matter of public concern for first amendment purposes. Considering the content, form, and context of the facts of this case, it is plain to us that, as a matter of law, no public concern was addressed by Hoffmann's grievance filing.

Nevertheless, Hoffmann has suggested that, even though it might be said that no public concern is raised by the content of his grievance filing, the very act of filing itself is a matter of public concern.[7] He argues that the public has an inherent concern for the ability of its government's employees to file grievances without fear of retaliation. He believes that other employees will be chilled from seeking redress of grievances in light of the treatment he received by doing so. In fact, he points out that other employees can no longer do so because the City has eliminated the grievance filing procedure from its personnel rules.

This argument is initially compelling, for there is something repugnant in the notion that government employees might be precluded from seeking redress of employment wrongs. But the argument quickly loses its appeal upon greater reflection. The grievance procedure is a privilege which the City may or may not choose to afford its employees.[8] With or without a grievance filing, Hoffmann could have engaged in conduct that touched a matter of public concern for which he could not be rebuked by the City.[9] He did not. The conduct on which he attempts to make a first amendment claim is only a personal grievance filing in which the public had no interest. Hoffmann raised only his own concerns; that he did so in a formal grievance filing does not transmute his concerns into public concerns. Having found no protected conduct under the first amendment, we need not consider the latter parts of the analysis laid out by *Hamer*.

## III.  CONCLUSION

We affirm the district court's grant of summary judgment to the City for the reason that Hoffmann did not engage in conduct protected under the first amendment because his grievance filing did not touch a matter of public concern.

7. In *Praprotnik v. City of St. Louis*, 798 F.2d 1168 (8th Cir.1986), *rev'd on other grounds*, 485 U.S. 112, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988), the act of filing a grievance was assumed to be an expression protected by the first amendment. However, the panel there expressly declined to consider whether that was a correct assumption under the law because the City of St. Louis had not disputed whether the expression was protected in its appeal. *Id.* at 1175. Thus, *Praprotnik* is not controlling precedent on the question.

8. Hoffmann's argument is somewhat ironic in this regard. He claims retaliation due to conduct (his grievance filing) which the City provided to him. Yet, the City might just have rightly had no grievance mechanism in place, and he would have been not only without recourse to appeal his firing, but also to charge a first amendment violation. The irony disappears once one realizes that it is not the ability to file a grievance which might make out the first

amendment case, it is the engagement in conduct which touches public concern which implicates the first amendment.

9. A comparison to a recent Fifth Circuit case is instructive. *Thompson v. City of Starkville, Mississippi*, 901 F.2d 456 (5th Cir.1990), involved strikingly similar facts. Thompson was a police officer discharged by the City of Starkville after he filed a written grievance complaining about promotions in the Police Department and made several oral grievances about misbehavior and improper promotions. There the Fifth Circuit affirmed the district court's denial of a summary judgment to the City of Starkville because the evidence created a fact question as to whether or not Thompson's grievance filings touched a matter of public concern where those filings raised questions of unjust promotions of other officers. In this case, Hoffmann's grievance filing concerns only his treatment in rehiring without raising any issues of public concern.