Rex W. CARLSON; Plaintiff–Appellee;

v.

MIDWAY R–1 SCHOOL DISTRICT; Defendant;

Janice Larson, Individually, and in her capacity as superintendent of Midway R–1 School District; Larie Thomas, Individually, and in her capacity as a member of the school board; Defendants–Appellants;

James L. Arnett, Individually, and in his capacity as a member of the school board; Defendant;

Richard Farr, Individually, and in his capacity as a member of the school board; Terry Carter, Individually, and in his capacity as a member of the school board; Bill Potts, Individually, and in his capacity as a member of the school board; Roy M. Beaman, Individually, and in his capacity as a member of the school board; Ronnie D. Jones, Sr., Individually, and in his capacity as a member of the school board; Patricia Shade, Individually, and as an employee of Midway R–1 School District; Robert Weltsch, Individually, and as an employee of Midway R–1 School District; Judy Long; Defendants–Appellants.

No. 94–3146.

United States Court of Appeals, Eighth Circuit.

Submitted: Feb. 15, 1995.

Decided: April 28, 1995.

Stephen Brown, Kansas City, MO, argued (Melodie A. Powell, on the brief) for appellants.

Gwen Caranchini, Kansas City, MO, argued, for appellee.

Before MCMILLIAN, Circuit Judge; HEANEY, Senior Circuit Judge; and MORRIS SHEPPARD ARNOLD, Circuit Judge.

HEANEY, Senior Circuit Judge.

Rex W. Carlson, a former member of the Board of Education of the Midway R–1 School District, brought an action alleging violations of his First Amendment rights and constructive discharge from the Board. The defendants—the school district, its superintendent and two employees, and the secretary and other members of the Board—sought summary judgment based on qualified immunity. The district court denied their motions,[1] and they appealed. We affirm.

Carlson was elected to the Board in April 1988. On October 22, 1990, he was removed from his position as a board member. The Board said he was removed in accordance with state law mandating removal of board members who miss three consecutive board meetings, unless excused by the Board. *See* Mo.Rev.Stat. § 162.303(2). In 1992 Carlson filed suit against the school district, the Board, and individual members of those bodies. Count I of his complaint alleged he was removed for speaking out to the Board, school district administrators, faculty, the press, and the public about various board activities and actions. He charged that the defendants' actions violated his First Amendment rights and amounted to his constructive discharge from the Board.

Both sides sought rulings in their favor on Count I. Carlson moved for partial summary judgment that certain categories of speech and conduct constituted "protected First Amendment expression." *Carlson v. Midway R–I School District,* No. 91–0702–CV–W–6, 1994 WL 409590, *3 (W.D.Mo. July 25, 1994) (memorandum & order). The district court denied the motion, stating that the factual bases underlying the claim of protected speech had not been adequately presented. *Id.* at *3–4. The school district defendants also moved for summary judgment, advancing theories of qualified immunity, the injunction bond rule, and collateral estoppel. The court denied their motions for summary judgment and for reconsideration of its decision. *See Carlson v. Midway R–I School District,* No. 91–0702–CV–W–6 (W.D.Mo. Aug. 26, 1994) (order). The sole issue now

---

1. The district court simultaneously granted certain defendants' motions for summary judgment on four other counts. No appeal has been taken from this decision.

before us on appeal is whether the district court erred in concluding that the school district defendants were not entitled to summary judgment on the basis of qualified immunity.

The district court first found that a school board's retaliation against one of its members for exercising First Amendment rights was actionable under the authority of *O'Brien v. Greers Ferry*, 873 F.2d 1115, 1119 (8th Cir.1989). Although *O'Brien* involved retaliation by a city council against a council member, the court found the analysis equally applicable to a school board's action against one of its members. The claim in *O'Brien*, as here, involved "constructive suspension where one is forced to resign from a position due to an intolerable situation." *Id.*

Under traditional rules for deciding First Amendment retaliation claims, Carlson must prove that his speech or actions were protected by the First Amendment, the defendants knew that he had a clearly established right to speak out on such matters of public concern, and the defendants forced him off the school board in retaliation for his protected activity. *See Hamer v. Brown*, 831 F.2d 1398, 1401 (8th Cir.1987). Carlson alleged that since the beginning of his term on the Board in April 1988 the various school district defendants engaged in efforts to stop him from bringing matters of public concern to the attention of the public and of state and federal authorities. Such matters included complaints to a state agency about the maintenance of school buses, as well as statements to a newspaper on this subject; calls to government agencies concerning construction of and drainage from a lagoon near the school; and complaints to school administrators about school discipline.

Carlson contends that, in response, one or more of the defendants sometimes held board meetings without notifying him; refused to put on the agenda various topics of public concern which he wanted to discuss in either open or closed session; continually asked him for his resignation; filed sexual harassment charges against him with the Equal Employment Opportunity Commission; reported him and his wife to state authorities when they took their children out of school, without any inquiry of the family which would have disclosed that the family was legally home schooling the children; and obtained a temporary restraining order against him in February 1990, which prevented him from entering school premises except for board meetings, prohibited direct contact with school district employees while engaged in their official duties, and required that all communications by Carlson as an individual board member be directed through the Board at its regular meetings or through other members of the Board. Carlson asserted that the nature and timing of the defendants' activities evidence a pattern of retaliation for his public outspokenness and reports to government agencies.

At the time of its order on the parties' summary judgment motions, the district court found that the factual bases of Carlson's alleged protected speech were not sufficiently developed to enable him to rule on whether the speech or conduct was protected activity,[2] and it declined to make an "advisory" ruling that certain "categories" of speech alleged by Carlson were protected. The court recognized that any disputes concerning the substance of what Carlson said and to whom would have to be developed with specificity at trial, after which the court would reach a legal determination of whether the speech was protected. *See Shands v. City of Kennett*, 993 F.2d 1337, 1342–43 (8th Cir. 1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 880, 127 L.Ed.2d 75 (1994). We agree with the district court, however, that at least some of the expression, if ultimately proved to be as alleged by Carlson, clearly involves matters of public concern and would constitute protected activity. Moreover, there is no dispute that Carlson had the right to speak out and report on such matters. The defendants do not argue to the contrary; indeed, they claim he did so unimpeded. Finally, Carlson has alleged sufficient facts to support the conclusion that, in retaliation for his

---

2. The court did rule that "investigations" that Carlson allegedly undertook, as opposed to "reports" or other speech he engaged in, did not constitute protected activity. *Carlson v. Midway R–I School District* (July 25, 1994), *supra*, at *4 n. 7.

exercise of First Amendment rights, the Board took actions designed to force him to resign from the Board. We therefore agree with the district court that Carlson made a colorable claim under 42 U.S.C. § 1983, and that the defendants were not entitled to summary judgment on the basis of qualified immunity.

In affirming the denial of qualified immunity, we express no opinion on the merits of Carlson's claims. The school district defendants, in their appeal, really ask us to decide more than we are able to on the record before us. They urge us to conclude that there is no basis for finding retaliation by the Board because Carlson "vacated" his position on the Board by operation of law when he missed three consecutive board meetings without being excused by the Board. The defendants point out that Carlson never notified the Board that he could not attend, nor asked that his absences be excused. A factfinder could conclude, however, that it would have been futile for Carlson to notify the Board or request that his absence be excused, if it found that the Board had engaged in other retaliatory actions against him. For example, Carlson testified at one point that "[t]hey filed a TRO against me so I didn't call." Deposition of Rex W. Carlson (July 13, 1992), at 102. The defendants argue that the actions relied upon by Carlson—such as telling him to keep quiet or resign, seeking a TRO, or filing a complaint with the EEOC— are legal and do not constitute a violation of Carlson's constitutional rights. The question properly framed, however, is not whether any of the defendants' individual acts violated a constitutional right but rather whether their total course of conduct during Carlson's tenure on the Board amounted to retaliation for his exercise of First Amendment rights.

Accordingly, we conclude on the record before us that the defendants are not entitled to qualified immunity, and we affirm the district court's denial of summary judgment on this basis.