United States Court of Appeals,

Eleventh Circuit.

No. 97-8268.

Melvin GRIGLEY, Plaintiff-Appellant,

v.

 CITY OF ATLANTA;  Beverly Harvard, in her official capacity as Police Chief of the City of
Atlanta;  S.M. O'Brien, individually and in her official capacity as Major in the City of Atlanta
Police Department;  Claire D'Agostino, individually and in her official capacity as Psychologist
employed by the City of Atlanta; Lou R. Moore, individually and in his official capacity as Sergeant
in the City of Atlanta Police Department;  Jimmy Martin, individually and in his official capacity
as Sergeant in the City of Atlanta Police Department, Defendants-Appellees.

March 4, 1998.

Appeal from the United States District Court for the Northern District of Georgia. (NO. 1:95-2351-
CC), Clarence Cooper, Judge.

Before BLACK and BARKETT, Circuit Judges, and PROPST[*], Senior District Judge.

BLACK, Circuit Judge:

 Appellant Melvin Grigley (Grigley) brought this action against the City of Atlanta and its

agents pursuant to 42 U.S.C. § 1983, alleging that he was retaliated against in violation of his First

Amendment right to petition.  The district court granted the Appellee's motion for summary

judgment, ruling that Grigley's expression was not protected by the First Amendment because it did

not relate to a matter of public concern.  We hold the "public concern" requirement applies to First

Amendment right to petition claims.

## I. BACKGROUND

Grigley is a male police officer employed as a Sergeant by the City of Atlanta Police

---

 [*]Honorable Robert B. Propst, Senior U.S. District Judge for the Northern District of Alabama,
sitting by designation.

Department. He is a 22-year veteran of that department. On May 31, 1993, Grigley was involved in a physical altercation at his home with Officer Phyllis Hayes-Dix, a female Atlanta police officer. The fight resulted from a dispute regarding the paternity of Hayes-Dix's son. City of East Point police officers were called to the scene and issued citations for disorderly conduct to Grigley and Hayes-Dix. Grigley alleges that although he was "repeatedly encouraged" to "drop" the charges against Hayes-Dix, he nevertheless testified against her. Hayes-Dix was found guilty of the charges and fined, while Grigley was found not guilty.[1]

Grigley contends that he was subjected to retaliation for pursuing the criminal charges against Hayes-Dix. The alleged retaliation consisted of disciplinary actions taken against him in connection with two other incidents. In November 1993, Grigley was involved in a physical altercation at his home with Karen Jackson, the mother of his daughter. Although he explained that he had been attacked by Jackson, the City of Atlanta Police Department's Office of Professional Standards (OPS) imposed a one-day suspension on Grigley, which was overturned on appeal. He was referred to the City's Psychological Services Unit (PSU) for an Early Warning Evaluation. On March 1, 1994, Grigley was involved in a traffic accident in which his vehicle collided with a vehicle driven by Jackson. He asserts that his vehicle accidently hydroplaned into Jackson's vehicle. Grigley alleges that he was taken to the OPS offices against his will and was required to take a drug test. He also was required to return to PSU and to attend counseling and domestic violence prevention classes. Grigley asserts that he was not at fault in either of the incidents and that the actions taken against him were in retaliation for his refusal to drop the charges against Hayes-Dix.

_____

[1]The City of Atlanta Police Department's Office of Professional Standards (OPS) conducted an investigation of the incident between Grigley and Hayes-Dix and recommended that both officers be charged with violating departmental work rules. The final disciplinary authority determined that Grigley would not be disciplined and that Hayes-Dix would receive a 2-day suspension.

The district court granted summary judgment against Grigley on his First Amendment claim, holding that Grigley's testimony against Hayes-Dix could not be characterized as speech on a matter of public concern. This appeal followed.[2]

## II. DISCUSSION

Claims by public employees of retaliation in violation of the First Amendment right to freedom of speech are analyzed in four steps. *See Bryson v. City of Waycross,* 888 F.2d 1562, 1565 (11th Cir.1989). First, the court makes the threshold determination of "whether the employee's speech may be "fairly characterized as constituting speech on a matter of public concern.' " *Id.* (quoting *Rankin v. McPherson,* 483 U.S. 378, 384, 107 S.Ct. 2891, 2896-97, 97 L.Ed.2d 315 (1987)). Second, if the court determines that the speech addresses a matter of public concern, the court balances the employee's First Amendment interests against " "the interest of the state, as an employer, in promoting the efficiency of the public services it performs through its employees.' " *Id.* (quoting *Pickering v. Board of Educ. of Township High Sch. Dist. 205,* 391 U.S. 563, 568, 88 S.Ct. 1731, 1734-35, 20 L.Ed.2d 811 (1968)). Third, if the court finds that the employee has satisfied the first two requirements, the fact-finder determines whether the employee's protected speech played a substantial part in the adverse employment decision. *Id.* Fourth, if the employee has prevailed on each of the previous three requirements, the state must prove by a preponderance of the evidence that " "it would have reached the same decision ... even in the absence of the

---

[2]In his complaint, Grigley alleged various other federal Constitutional and state law claims. The district court granted the Appellees' motion for summary judgment on all counts. Grigley raised the following issues on appeal: (1) whether the district court erred in granting summary judgment against Grigley on his Equal Protection claim of gender discrimination; (2) whether the individually named defendants are entitled to qualified immunity from the federal claims; (3) whether the individually named defendants are immune from the state law claims; and (4) whether the district court erred in granting summary judgment to the City of Atlanta on Grigley's claims brought pursuant to 42 U.S.C. § 1983. These issues do not warrant discussion. We affirm the district court.

protected conduct.' " *Id.* at 1566 (quoting *Mt. Healthy City School District Board of Education v. Doyle,* 429 U.S. 274, 286, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977)).

The district court dismissed Grigley's claim at the first step of this analysis, ruling that Grigley's speech did not involve a matter of public concern. Grigley does not contest the district court's finding that the charges and testimony against Hayes-Dix did not involve a matter of public concern. Grigley argues instead that the district court failed to distinguish his right to petition claim from the freedom of speech claims at issue in this Circuit's prior case law. Specifically, Grigley asserts that the public concern requirement is not applicable to a right to petition claim.

The majority of circuits that have considered whether the public concern requirement applies to First Amendment retaliation claims based on the right to petition have determined that it does apply to such claims. *Valot v. Southeast Local Sch. Dist. Bd. of Educ.,* 107 F.3d 1220, 1226 (6th Cir.1997), *cert. denied,* --- U.S. ----, 118 S.Ct. 164, --- L.Ed.2d ---- (1997); *White Plains Towing Corp. v. Patterson,* 991 F.2d 1049, 1059 (2d Cir.1993); *Hoffmann v. Mayor, Councilmen and Citizens of Liberty,* 905 F.2d 229, 233 (8th Cir.1990); *Schalk v. Gallemore,* 906 F.2d 491, 498 (10th Cir.1990); *Belk v. Town of Minocqua,* 858 F.2d 1258, 1261-62 (7th Cir.1988); *Day v. South Park Indep. Sch. Dist.,* 768 F.2d 696, 701 (5th Cir.1985). Grigley asks that we adopt the minority position announced by the Third Circuit in *San Filippo v. Bongiovanni,* 30 F.3d 424 (3d Cir.1994), holding that there is no public concern requirement for Petition Clause claims.[3]

---

[3]Although we do not find the reasoning of *Bongiovanni* to be persuasive, it is not clear that *Bongiovanni* would support Grigley under these facts. *Bongiovanni* repudiates the public concern requirement where the government employer "formally adopts a mechanism for redress of those grievances for which government is allegedly accountable," reasoning that "when one files a "petition' one is addressing government and asking government to fix what, allegedly, government has broken or has failed in its duty to repair." 30 F.3d at 442. Grigley's claim can be distinguished for two reasons: (1) Grigley did not file any sort of claim or grievance at all, but merely testified against a female co-worker and refused to "drop" charges against that co-worker; and (2) Grigley did not seek to redress any adverse action taken by the government

The issue has not been addressed specifically by this Circuit. We have had cases factually similar to the present case that were brought as freedom of speech claims, but could have been framed as right to petition claims. In those cases, we did not distinguish between First Amendment retaliation claims based on freedom of speech and those based on the right to petition.[4] For example, *Morgan v. Ford,* 6 F.3d 750 (11th Cir.1993), the case relied on by the district court, involved a grievance filed against a government employer and its facts therefore would have supported a right to petition claim.[5] We concluded that "[a]s an employee grievance, Morgan's speech was not a matter of public concern," and "[s]ummary judgment on Morgan's section 1983 claim was therefore appropriate." *Id.* at 755.

The public concern requirement has its origins in *Connick v. Myers,* 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). *Connick* involved a claim by a government employee that she was terminated in retaliation for circulating a questionnaire critical of employment conditions. The

---

employer against him. The holding in *Bongiovanni* focuses on the relationship between the government employer and the employee and seeks to vindicate the right of the employee to pursue the employer's formal grievance process. The facts of the present case do not fall within that framework.

[4]See, e.g., Holbrook v. City of Alpharetta, 112 F.3d 1522, 1529-30 (11th Cir.1997) (rejecting claim of retaliatory discrimination because disabled employee's filing of state *ante litem* claim as a prerequisite to bringing a legal action against the City for discrimination did not constitute speech on a matter of public concern); *Watkins v. Bowden,* 105 F.3d 1344, 1352-54 (11th Cir.1997) (rejecting claim of retaliatory termination based on employee's complaints of harassment, explaining that "if Watkins's complaints did not affect a matter of public concern, her First Amendment claims must fail"); *Renfroe v. Kirkpatrick,* 722 F.2d 714, 715 (11th Cir.1984) (rejecting retaliatory nonrehiring claim of teacher who had filed a grievance with the Superintendent of Education, stating that "plaintiff's grievance is protected under the First Amendment only if it related to a matter of public concern.").

[5]The employee's speech at issue in *Morgan* consisted of "complaints to official bodies—the Superintendent of the ACMI, Internal Affairs, and the Office of Fair Employment Practices." 6 F.3d at 755. This Court held that "Morgan primarily spoke as an employee in order to improve her work environment.... [T]he main thrust of her speech took the form of a private employee grievance." *Id.*

Supreme Court concluded that although public employees do have some First Amendment interest in speech that does not involve a matter of public concern, that interest is categorically outweighed by the employer's interest in the efficient functioning of the workplace.

> [I]f Myers' questionnaire cannot be fairly characterized as constituting speech on a matter of public concern, it is unnecessary for us to scrutinize the reasons for her discharge....
>
> ... [W]hen a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior.

*Id.* at 146-47, 103 S.Ct. at 1690.

The public concern requirement exists because that category of expression is at the core of the First Amendment's protections: "Our holding today is grounded in our long-standing recognition that the First Amendment's primary aim is the full protection of speech upon issues of public concern, as well as the practical realities involved in the administration of a government office." *Id.* at 154, 103 S.Ct. at 1694. Thus, the employer's interest in the efficient functioning of the workplace is potentially overridden only where the employee's speech implicates the central value of the First Amendment by addressing a matter of public concern.

The rationale of *Connick* applies to expression that takes the form of a petition as well as expression that takes the form of speech. The Petition Clause is not entitled to any greater protection than the Free Speech Clause:

> The Petition Clause ... was inspired by the same ideals of liberty and democracy that gave us the freedoms to speak, publish, and assemble. These First Amendment rights are inseparable, and there is no sound basis for granting greater constitutional protection to statements made in a petition to the President than other First Amendment expressions.

*McDonald v. Smith,* 472 U.S. 479, 485, 105 S.Ct. 2787, 2791, 86 L.Ed.2d 384 (1985) (citations omitted). The distinction urged by Grigley between retaliation claims based on freedom of speech

and those based on the right to petition was not envisioned in *Connick:*

> To presume that all matters which transpire within a government office are of public concern would mean that virtually every remark—and certainly every criticism directed at a public official—would plant the seed of a constitutional case. While as a matter of good judgment, public officials should be receptive to constructive criticism offered by their employees, the First Amendment does not require a public office to be run as a roundtable for employee complaints over internal office affairs.

*Connick,* 461 U.S. at 149, 103 S.Ct. at 1691.

We hold that a public employee's claims of retaliation in violation of the First Amendment right to petition is subject to the public concern requirement. Accordingly, where a public employee's petition does not address a matter of public concern, the judicial inquiry should end at the first of the four steps outlined in *Bryson,* and no specific balancing of interests is necessary.

AFFIRMED.