Ronald KINCADE, Plaintiff–Appellee,

v.

CITY OF BLUE SPRINGS, MISSOURI; Gregory Grounds, Individually, and in his capacity as Mayor, Defendants–Appellants,

Frederick Siems, Individually, and in his capacity as City Administrator, Defendant,

Russell Clark, in his capacity as Alderman; Evelyn Ericson, in her capacity as Alderman, Defendants–Appellants,

Dixie Flynn, in her capacity as Alderman, Defendant,

Larry Morgan, in his capacity as Alderman; Emil Spears, in his capacity as Alderman, Defendants–Appellants.

No. 94–2611.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 13, 1995.

Decided Aug. 25, 1995.

Rehearing and Suggestion for Rehearing En Banc Denied Oct. 12, 1995.

Shelly L. Freeman, Kansas City, MO, argued (John R. Phillips, Kansas City, MO, on the brief), for appellants.

Gwen G. Caranchini, Kansas City, MO, argued, for appellee.

Before HANSEN, Circuit Judge, JOHN R. GIBSON, Senior Circuit Judge, and BOGUE,* Senior District Judge.

HANSEN, Circuit Judge.

Ronald Kincade brought this 42 U.S.C. § 1983 action, claiming that the City of Blue Springs, Missouri, and several City officials (Appellants) violated his First Amendment rights by discharging him from his employment as the City Engineer/Director of Public Works. The district court[1] denied the Appellants' motions for summary judgment. The Appellants appeal, contending that Kincade's speech is not constitutionally protected, they are entitled to qualified immunity, and insufficient evidence of causation exists between Kincade's speech and his termination. We affirm.

I.

On June 4, 1990, Ronald Kincade was hired as the Engineer/Director of Public Works for Blue Springs, Missouri (City). Kincade's written job description for this position required him to: represent the City in contacts with other governmental jurisdictions, contractors, and the general public on engineering matters; serve as a member of the City's Zoning and Planning Commission; and meet with and advise the City Adminis-

* The HONORABLE ANDREW W. BOGUE, Senior United States District Judge for the District of South Dakota, sitting by designation.

1. The Honorable Fernando J. Gaitan, Jr., United States District Judge for the Western District of Missouri, adopting the Report and Recommendation of the Honorable Sarah W. Hays, United States Magistrate Judge for the Western District of Missouri.

trator, the Mayor, and the Board of Aldermen (BOA) on City construction and development projects. One of the first assignments Kincade received in this position was to provide the BOA with advice as to whether the Waterfield Dam was structurally capable of holding the Adams Dairy Parkway, a road that the City intended to construct in the future.

On August 5, 1991, Kincade gave a verbal status report on the assignment to the Mayor (Gregory Grounds), the BOA (Russell Clark, Evelyn Ericson, Dixie Flynn, Larry Morgan, and Emil Spears), the City Administrator (Frederick Siems), and the City Attorney (Robert McDonald). The comments Kincade made during this verbal status report are the subject of this appeal. Kincade's report was made in an executive session, which is closed to citizens, *see* Mo.Ann.Stat. § 610.021 (Vernon 1995), and the content of his report was not recorded. Kincade made this report in his capacity as City Engineer and pursuant to an assignment from the BOA.

Kincade contends that during the August 5 meeting, he offered opinions on certain issues with respect to the Waterfield Dam. Specifically, he claims that he stated that in June of 1987 the City paid $62,510 to several local developers, including Bill House, for work that had not yet been completed, and that the dam had not received certain certification as the agreement with the developers required. Kincade also contends that he stated that, due to several inadequacies of the dam which he proceeded to outline, homes and residents downstream from the dam would be in danger of being flooded if the structural integrity of the dam was compromised. Finally, Kincade claims that he also raised the question of legal action against House over issues relating to the dam.[2]

The Appellants contend that Kincade did not make the above statements and, further, that he failed to provide direct answers to their questions about the dam. They assert that Kincade stated that the dam would have to be torn down and rebuilt in order to ensure that it was structurally safe, and they also claim that at no time did Kincade express an opinion concerning the structural integrity of the dam. The Appellants claim that Kincade's report was wholly inadequate for the assignment he was given.

In an executive session of the BOA on October 21, 1991, a majority of the BOA voted to request that Kincade either resign his position or be terminated. At some point during the meeting, City Attorney McDonald explained that under the City ordinance and Missouri law, Kincade was an employee-at-will who served at the pleasure of the BOA and that Kincade's employment could be terminated at any time for any reason, so long as the reason was not unlawful. The parties dispute whether the City Attorney gave this advice before or after the BOA decided to terminate Kincade.

On October 24, 1991, Kincade's employment was terminated. Kincade then filed this 42 U.S.C. § 1983 action, arguing that he was unlawfully terminated for making comments protected by the First Amendment on

2. Kincade claims that he stated the following at the August 5, 1991, meeting:

(1) that the north end of the dam did not have required embankment materials;

(2) that because the north end of the dam did not have the required embankment, the emergency spillway required by the design plans was not present, thereby incurring the likelihood of erosion and reduced structural integrity of the dam;

(3) that additionally, the emergency spillway was not constructed of concrete as required by the design plans, thereby contributing to the potential of erosion of the dam;

(4) that the design for the dam had called for a 50 foot width at the top;

(5) that the City had contracted for an additional 10 feet to be added to the width of the dam, for a total 60 foot width, for the purpose of providing a crossing for the Adams Dairy Parkway;

(6) that the dam was actually 42 to 49 feet wide as of August 1991;

(7) that the City had paid $62,510 to House and Weatherstone in June of 1987, even though the work had not been completed;

(8) that the dam had never been certified in compliance with the Development Agreement or the 1987 Geotech report; and

(9) that because of the inadequacies of the dam, homes and residents in those homes downstream from the dam and within several hundred yards of the dam were at risk of flood damage and personal injury if the dam's structural integrity was compromised by erosion from the above inadequacies.

(Appellee's Supp.Addend. at B–6.)

three occasions. The district court granted the Appellants' motions for summary judgment with respect to two instances of speech, but denied their motions for summary judgment with respect to Kincade's claim that he was unlawfully discharged because of his speech on August 5, 1991.[3] This appeal followed.

## II.

### A.

The Appellants contend that they are entitled to summary judgment for several reasons. First, they argue that Kincade's August 5, 1991, speech is not constitutionally protected. Second, they contend that they are entitled to qualified immunity. Finally, they argue that Kincade has presented insufficient evidence that his August 5 speech was the cause of his termination.

■ We must first satisfy ourselves that we have jurisdiction to address these arguments. A district court's denial of a defendant's summary judgment motion on a claim of qualified immunity is an immediately appealable decision, even though the denial is not a final judgment. *Mitchell v. Forsyth*, 472 U.S. 511, 530, 105 S.Ct. 2806, 2817–18, 86 L.Ed.2d 411 (1985). In addition, we have held that "when an interlocutory appeal is before us under *Mitchell* as to the defense of qualified immunity, we have jurisdiction also to decide closely related issues of law," i.e., pendent appellate claims. *Drake v. Scott*, 812 F.2d 395, 399 (8th Cir.), *cert. denied*, 484 U.S. 965, 108 S.Ct. 455, 98 L.Ed.2d 395 (1987). However, we must re-examine this principle in light of the Supreme Court's recent holding in *Swint v. Chambers County Comm'n*, — U.S. —, 115 S.Ct. 1203, 131 L.Ed.2d 60 (1995). In *Swint*, a unanimous Court ruled that although the Eleventh Circuit had jurisdiction to immediately review a district court's denial of a police officer's summary judgment motion on qualified immunity grounds, the court of appeals did not have jurisdiction to address an unrelated question of liability presented by the co-defendant County Commission. *Id.* at —,

115 S.Ct. at 1212. The Court emphasized that there was "no 'pendent party' appellate jurisdiction of the kind" that the court of appeals exercised in that case. *Id.* Nevertheless, the Court stated that, "[w]e need not definitively or preemptively settle here whether or when it may be proper for a court of appeals with jurisdiction over one ruling to review, conjunctively, related rulings that are not themselves independently appealable." *Id.*

Under *Swint*, "pendent appellate jurisdiction might still be appropriate where the otherwise nonappealable decision is 'inextricably intertwined' with the appealable decision, or where review of the nonappealable decision is 'necessary to ensure meaningful review' of the appealable one." *Moore v. City of Wynnewood*, 57 F.3d 924, 930 (10th Cir.1995) (quoting *Swint*, — U.S. at —, 115 S.Ct. at 1212). *See also L.S.T., Inc. v. Crow*, 49 F.3d 679, 683 n. 8 (11th Cir.1995) (*Swint* precludes courts from addressing pendent interlocutory claims that are not "inextricably intertwined" with the collateral order that is properly appealed, or where review of the pendent claim is not necessary to ensure meaningful review of the properly appealed issue); *Kaluczky v. City of White Plains*, 57 F.3d 202, 207 (2d Cir.1995) (*Swint* limited to claims involving "pendent party" appellate jurisdiction; Court did not narrow scope of pendent appellate jurisdiction, appearing to contemplate pendent appellate jurisdiction over claims that are "inextricably intertwined" or "necessary to ensure meaningful review" of qualified immunity issue).

[A] pendent appellate claim can be regarded as inextricably intertwined with a properly reviewable claim on collateral appeal only if the pendent claim is coterminous with, or subsumed in, the claim before the court on interlocutory appeal—that is, when the appellate resolution of the collateral appeal necessarily resolves the pendent claim as well.

*Moore*, 57 F.3d at 930. To the extent these definitions of pendent appellate claims qualify as our own "closely related" definition, we adopt them as our own standard.

---

**3.** The district court's grant of summary judgment to the Appellants with respect to the other two instances of speech is not challenged in this appeal.

In this case, our jurisdiction to hear the individual Appellants' qualified immunity claims is without doubt. We conclude that we have jurisdiction to hear the Appellants' claims that Kincade's August 5, 1991, speech is not constitutionally protected because the claims are "inextricably intertwined" with their qualified immunity arguments. Both issues require application of the same constitutional test, and therefore, the question concerning whether the speech is entitled to constitutional protection is "coterminous with, or subsumed in" the qualified immunity issue.

However, we conclude that the Appellants' argument that Kincade has presented insufficient evidence to establish that his August 5, 1991, speech caused his termination is not "inextricably intertwined" with the qualified immunity claims. This causation argument presents significantly different issues. Moreover, in another recent case a unanimous Supreme Court held that "a defendant, entitled to invoke a qualified-immunity defense, may not appeal a district court's summary judgment order insofar as that order determines whether or not the pretrial record sets forth a 'genuine' issue of fact for trial." *Johnson v. Jones,* — U.S. —, —, 115 S.Ct. 2151, 2159, 132 L.Ed.2d 238 (1995). The district court here decided that there were genuine issues of fact for trial on the causation issue, and thus, we decline to address it.

Finally, although the Appellants dispute what Kincade stated at the August 5, 1991, BOA executive meeting, they argue that even assuming the substance of Kincade's speech is as he claims, such speech is not constitutionally protected and/or they are entitled to qualified immunity. Therefore, for the purpose of this appeal, we will apply the pertinent legal standards to the speech that Kincade claims that he made on August 5, 1991.

### B.

The Appellants argue that Kincade's August 5 speech is not constitutionally protected. A public employer "may not discharge an employee on a basis that infringes [upon] that employee's constitutionally protected interest in freedom of speech." *Ran-*

*kin v. McPherson,* 483 U.S. 378, 383, 107 S.Ct. 2891, 2896, 97 L.Ed.2d 315 (1987) (citing *Perry v. Sindermann,* 408 U.S. 593, 597, 92 S.Ct. 2694, 2697–98, 33 L.Ed.2d 570 (1972)). Courts addressing claims by public employees who contend that they have been discharged for exercising their right to free speech must employ a two-step inquiry. *Dunn v. Carroll,* 40 F.3d 287, 291 (8th Cir. 1994). First, the court must determine whether the speech may be described as "speech on a matter of public concern." *Connick v. Myers,* 461 U.S. 138, 146, 103 S.Ct. 1684, 1689, 75 L.Ed.2d 708 (1983). If so, the second step involves balancing the employee's right to free speech against the interests of the public employer. *Rankin,* 483 U.S. at 388, 107 S.Ct. at 2899 (citing *Pickering v. Board of Educ.,* 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968)). The focus is on striking "a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the [public employer] in promoting the efficiency of the public services it performs through its employees." *Pickering,* 391 U.S. at 568, 88 S.Ct. at 1734. These two questions are matters of law for the court to resolve. *Dunn,* 40 F.3d at 291. The Appellants argue that Kincade's speech does not touch upon a matter of public concern and, even if it did, Kincade's interest in making this speech did not outweigh the City's interest in maintaining the efficient operation of its enterprise, and therefore, the speech cannot survive the *Pickering* balancing test.

### 1. Does the speech touch upon a matter of public concern?

The Appellants contend that Kincade's speech does not touch upon a matter of public concern because Kincade made this speech as an employee, within the role and scope of the employer-employee relationship, and not as a concerned citizen. They note that Kincade spoke on August 5, 1991, pursuant to a work assignment given to him by the BOA and that he spoke in his capacity as City Engineer. They also observe that Kincade never communicated his purported concerns about the dam and the agreements

with local developers concerning the dam to the public; rather the speech was made only to the BOA and several other City officials during an executive session of the BOA.

An employee's speech touches upon a matter of public concern when it is a "matter of political, social, or other concern to the community" at large. *Connick,* 461 U.S. at 146, 103 S.Ct. at 1689. *Connick* emphasized that speech does not touch upon a matter of public concern when the employee speaks "upon matters only of personal interest." *Id.* at 147, 103 S.Ct. at 1690. In determining whether speech touches upon a matter of public concern, we examine the content, form, and context of the speech, given the record as a whole. *Id.* at 147–48, 103 S.Ct. at 1690–91.

> The focus is on the role that the employee has assumed in advancing the particular expressions: that of a concerned public citizen, informing the public that the state institution is not properly discharging its duties, or engaged in some way in misfeasance, malfeasance or nonfeasance; or merely as an employee, concerned only with internal policies or practices which are of relevance only to the employees of that institution.

*Cox v. Dardanelle Pub. Sch. Dist.,* 790 F.2d 668, 672 (8th Cir.1986) (footnote and citations omitted).

We conclude that Kincade's August 5, 1991, speech touched upon matters of public concern. He stated that the City had paid local developers a substantial amount of money for work on the dam that had not been done. We generally have held that speech about the use of public funds touches upon a matter of public concern. *Hamer v. Brown,* 831 F.2d 1398, 1402 (8th Cir.1987) (holding speech touched upon a matter of public concern because it "related to the expense of public funds"). *See also Bausworth v. Hazelwood Sch. Dist.,* 986 F.2d 1197, 1199 (8th Cir.1993) (M. Arnold, J., concurring) ("speech that either directly, or by reasonable inference, criticizes public officials' use of the public's funds lies at the core of the speaker's First Amendment rights"). Kincade's comments were of interest to the community and did not involve issues that were relevant only to the employees of the City. Kincade's comments clearly were not limited to matters of personal interest to him only. We find *Hamer* to be analogous to the fact of this case because, like Kincade, Hamer's speech concerned the expenditure of public funds and also was made in response to an inquiry by a governmental committee. *Hamer,* 831 F.2d at 1402.

More significantly, under the factual assumptions we have made, Kincade stated that homes and residents downstream from the dam could become imperiled if the dam's structural integrity was compromised. These statements concerned potential danger to the community's citizens, which surely is a matter of concern to the public and not of some personal interest solely to the speaker. Thus, we believe that Kincade's speech concerned matters which can be "fairly considered as relating to matter[s] of ... concern to the community." *Connick,* 461 U.S. at 146, 103 S.Ct. at 1690.

The Appellants argue that under *Bausworth,* when a public employee's speech is made in his capacity as a public employee, such speech cannot touch upon a matter of public concern. 986 F.2d at 1198. The *Bausworth* plaintiff's speech involved relaying a complaint from a parent to a school official about the district's decision to charge transportation costs for student field trips, and then informing the parent of the school official's response. *Id.* We stated that in determining whether speech touches upon a matter of public concern, "we focus on the employee's role in conveying the speech rather than the public's interest in the speech's topic." *Id.*

The Appellants seize upon this language and argue that when a public employee speaks in his role as an employee, that speech cannot touch upon a matter of public concern. However, our recent opinion in *Mumford v. Godfried,* 52 F.3d 756 (8th Cir. 1995), rejects the type of broad interpretation of *Bausworth* that the Appellants would have us adopt. In *Mumford,* we stated that *Bausworth* must be considered in light of the particular facts of that case, namely that "the [*Bausworth*] plaintiff's role as messenger was no more protected by the First Amend-

ment than if she had physically delivered the information in writing back and forth between the concerned parents and the school officials." *Mumford,* 52 F.3d at 761. When viewed in that context, it became clear why we stated in *Bausworth* that in determining whether speech touches upon a matter of public concern, " 'we focus on the employee's role in conveying the speech rather than the public's interest in the speech's topic.' " *Id.* (quoting *Bausworth,* 986 F.2d at 1198). In *Mumford,* we went on to hold that the plaintiff's speech touched upon a matter of public concern because the plaintiff (like Kincade here) was not merely conveying information on behalf of other parties, he was conveying his own personal opinion on an issue. *Id.* Thus here, as in *Mumford,* we find *Bausworth* to be readily distinguishable.

For similar reasons, we find the assumed facts of this case distinguishable from other cases that the Appellants rely upon for the proposition that a public employee's speech is not protected when the individual is speaking in his or her role as a public employee. *See Thomson v. Scheid,* 977 F.2d 1017, 1021 (6th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 2341, 124 L.Ed.2d 251 (1993) (plaintiff's conversations with supervisors about filing complaint against County Commissioner involved only matters of internal department policy and did not touch upon public concern; likewise, statements to Agent of the Office of the Inspector General were not protected speech because superiors approved of the contacts and therefore plaintiff was only acting in the course of his employment); *Marquez v. Turnock,* 765 F.Supp. 1376, 1385 (C.D.Ill.1991) (disgruntled public employee's speech related to primarily internal office issues where speech was made because of employee's dissatisfaction with his employment, and therefore speech was made as employee rather than citizen), *aff'd,* 967 F.2d 1175 (7th Cir.1992).

 We also reject the Appellants' contention that the speech did not touch upon a matter of public concern because it occurred in a closed executive session of the BOA and was not conveyed to the public. A public employee's First Amendment protection is not lost when the speech is made in private

to the employer rather than to the public. *Givhan v. Western Line Consol. Sch. Dist.,* 439 U.S. 410, 414–16, 99 S.Ct. 693, 695–97, 58 L.Ed.2d 619 (1979); *see also Mumford,* 52 F.3d at 761–62 (citing *Givhan,* speech directed only to faculty members touched upon matter of public concern, even though not conveyed to public audience).

The district court correctly concluded that Kincade's August 5, 1991, speech touched upon a matter of public concern.

### 2. The Pickering Balancing Test

 Because Kincade's comments on August 5, 1991, touched upon a matter of public concern, we must balance Kincade's free speech rights against the interests of the City. *Pickering,* 391 U.S. at 568, 88 S.Ct. at 1734. Under the *Pickering* balancing test, the primary focus of the City's interest element is to determine whether the speech undermines "the effective functioning of the public employer's enterprise." *Rankin,* 483 U.S. at 388, 107 S.Ct. at 2899 (discussing *Pickering,* 391 U.S. at 570–73, 88 S.Ct. at 1735–37). Factors relevant in conducting this test are whether the speech creates disharmony in the workplace, impedes the speaker's ability to perform his duties, or impairs working relationships with other employees. *Shands v. City of Kennett,* 993 F.2d 1337, 1344 (8th Cir.1993). The City bears the burden under the *Pickering* balancing test of establishing permissible grounds for Kincade's discharge. *Id.*

 The magistrate judge concluded that the Appellants failed to present any evidence that Kincade's August 5 speech caused disruption in the workplace or inefficiency and delay in the government's services. The magistrate judge concluded, therefore, that it was impossible to balance Kincade's interest in making the speech with the City's interest in regulating the speech because the City produced no evidence to support its assertions. The district court adopted this conclusion.

The Appellants maintain that Kincade's August 5 speech created disruption in the workplace and caused inefficiency in government services because the report was un-

timely (approximately one year after Kincade was given the assignment), and Kincade's answers to the Appellants' questions were vague and equivocal. The Appellants argue that the magistrate judge overlooked crucial portions of the record that they have presented regarding the negative impact of Kincade's comments on the City's operations.

The Appellants' argument is largely based on bare allegations that the speech caused the City problems; the Appellants have not produced more than minimal specific evidence to support these assertions. Moreover, the minimal evidence the Appellants have offered at best constitutes their version of Kincade's August 5 comments—specifically that Kincade's answers to their questions were vague, evasive, and unsupported. As noted above, given the posture of this case, we must assume that the substance of Kincade's August 5, 1991, speech is as he claims, without considering the Appellants' version.

The Appellants have failed to provide even a scintilla of evidence that Kincade's August 5 statements caused disharmony in the workplace, impaired his ability to perform his duties, or impaired his working relationships with other employees. Therefore, the district court properly declined to conduct the *Pickering* balancing test.

### C.

The Appellants next argue that, even if Kincade's August 5, 1991, speech was constitutionally-protected, they are entitled to qualified immunity. "Public officials are entitled to qualified immunity when their 'conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Buzek v. County of Saunders,* 972 F.2d 992, 996 (8th Cir.1992) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 814, 102 S.Ct. 2727, 2736, 73 L.Ed.2d 396 (1982)). To be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). In other words, to decide whether public officials are entitled to qualified immunity, a court must determine

whether the officials' actions were objectively reasonable in light of the legal rules that were clearly established at the time the action occurred. *Id.* at 639, 107 S.Ct. at 3038–39.

The Appellants contend that they are entitled to qualified immunity because, given the fact-intensive nature of the *Pickering* balancing test, the law governing free speech questions for public employees can never be "clearly established." They also claim that Kincade's right to make this speech could not be "clearly established" because the state of the law was uncertain regarding whether a public employee can be speaking on an issue of public concern when the employee is speaking in his role as an employee.

"[W]hen *Pickering*'s fact-intensive balancing test is at issue, the asserted First Amendment right 'can rarely be considered "clearly established" for purposes of the *Harlow* qualified immunity standard.'" *Buzek v. County of Saunders,* 972 F.2d at 997 (quoting *Bartlett v. Fisher,* 972 F.2d 911, 916 (8th Cir.1992)). "[I]n deciding whether the free speech right is clearly established, it is critical to determine whether the defendants have put the *Pickering* balancing test at issue by producing evidence that the speech activity had an adverse effect on the efficiency of the public employer's operations." *Grantham v. Trickey,* 21 F.3d 289, 294 (8th Cir.1994). In *Grantham,* we stated that "we do not hold that a simple assertion by the employer that the speech activity affected morale is enough to support a grant of qualified immunity," but where officials present "specific and unrefuted evidence that [the plaintiff's speech] ... substantially disrupted the work environment," they may be entitled to qualified immunity. *Id.* at 295 n. 4.

As noted above, the Appellants have merely asserted that Kincade's speech adversely affected the efficiency of the City's operations and substantially disrupted the work environment without presenting any specific evidence to support this assertion. They therefore have not put the *Pickering* balancing test at issue, and accordingly, we reject their claim that they are entitled to

qualified immunity because free speech questions for public employees, as a matter of law, cannot be "clearly established."

 We likewise disagree with the Appellants' argument that they are entitled to qualified immunity because the state of the law was unclear with respect to whether a public employee can be speaking on matters of public concern when the speech is made in his capacity as a public employee. At the time of Kincade's termination, the cases made clear that speech touches upon a matter of public concern when it deals with issues of interest to the community. *Connick*, 461 U.S. at 146, 103 S.Ct. at 1689–90; *Cox*, 790 F.2d at 672. As noted above, Kincade's speech clearly addressed issues that the public would be interested in, not issues that have some personal interest only to Kincade.

The Appellants also argue that they are entitled to qualified immunity because they relied on the advice of counsel in deciding to terminate Kincade. Reliance on the advice of counsel is a factor to be weighed in assessing whether a public official is entitled to qualified immunity. *See Tubbesing v. Arnold*, 742 F.2d 401, 407 (8th Cir.1984) (defendants acted in good faith with respect to termination decision in relying on advice of counsel). However, we conclude that *Tubbesing* is not relevant at this stage of the case because we agree with the magistrate judge that a factual dispute remains about whether counsel's advice was given before or after the BOA voted to terminate Kincade. Moreover, a factual dispute exists about whether counsel was informed that Kincade was being terminated because of his August 5, 1991, speech, and therefore, counsel's advice can hardly be said to be tailored to the facts. *See V–1 Oil Co. v. State of Wyoming Dept. of Envtl. Quality*, 902 F.2d 1482, 1489 (10th Cir.) (in determining whether defendant was entitled to qualified immunity because he relied on the advice of counsel, court should consider whether counsel had been given complete information about facts giving rise to controversy), *cert. denied*, 498 U.S. 920, 111 S.Ct. 295, 112 L.Ed.2d 249 (1990). Therefore, the district court committed no error in denying the Appellants quali-fied immunity for relying on the advice of counsel.

## III.

For the reasons enumerated above, we affirm the judgment of the district court.