# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT
_____

Nos. 96-4239/97-1077


M. Sue Porter,

                                        \*
                                        \*

      v.

                                        \*
                                        \*
                                        \*
                                        \*


            Appellees.

                                        \*
                                        \*
                                        \*


            Appellee.                 Appeals from the United States
                                         District Court for the
                                        \*

the Dawson Educational Service
Cooperative, in his individual and
official capacities, George Foshee,
Board Member of the Dawson
Educational Service Cooperative,
in his individual and official capacities,
Joe Clark, Board Member of the
Dawson Educational Service
Cooperative, in his individual and
official capacities, Jerry Johnson,
Board Member of the Dawson
Educational Service Cooperative,
in his individual and official capacities,

Randy King, Board Member of                    *
the Dawson Educational Service                 *
Cooperative, in his individual and             *
official capacities, Irvin Bass,               *
Board Member of the Dawson                     *
Educational Service Cooperative,               *
in his individual and official capacities,     *
Roy Rowe, Board Member of                      *
the Dawson Educational Service                 *
Cooperative, in his individual and             *
official capacities, Steven Floyd,             *
Board Member of  the Dawson                    *
Educational Service Cooperative,               *
in his individual and official capacities,     *
Diana Julian, Board Member of                  *
the Dawson Educational Service                 *
Cooperative, in his individual and             *
official capacities, Frank Chenault,           *
Board Member of the Dawson                     *
Educational Service Cooperative,               *
in his individual and official capacities,     *
Danny Henley, Board Member of                  *
the Dawson Educational Service                 *
Cooperative, in his individual and             *
official capacities, J.L. Ford,                *
Board Member of the Dawson                     *
Educational Service Cooperative,               *
in his individual and official capacities,     *
Jerry Moore, Board Member of                   *
the Dawson Educational Service                 *
Cooperative, in his individual and             *
official capacities, Jim Dalton,               *
Board Member of the Dawson                     *
Educational Service Cooperative,               *
in his individual and official capacities,     *
                                               *
          Appellees,                           *

-2-

David Craig, Board Member of      *
the Dawson Educational Service      *
Cooperative, in his individual and      *
official capacities,      *

         *

       Appellee.      *

———————

Submitted: November 20, 1997

Filed: July 27, 1998

———————

Before RICHARD S. ARNOLD,[1] Chief Judge, McMILLIAN, Circuit Judge,
and STEVENS,[2] District Judge.

———————

McMILLIAN, Circuit Judge.


M. Sue Porter appeals from a final judgment entered in the United States District Court[3] for the Eastern District of Arkansas, setting aside an amended judgment on a jury verdict in her favor and entering judgment in favor of appellees David Craig and Don Henson. Porter v. Dawson Educational Service Cooperative, No. LR–C–96–101 (E.D. Ark. Nov. 15, 1996). For reversal, appellant argues the district court erred in

———————

[1]The Honorable Richard S. Arnold stepped down as Chief Judge on April 17, 1998. He has been succeeded by the Honorable Pasco M. Bowman.

[2]The Honorable Joseph E. Stevens, Jr., United States District Judge for the Western District of Missouri, sitting by designation.

[3]The Honorable James M. Moody, United States District Judge for the Eastern District of Arkansas.

-3-

holding that her speech was not protected by the First Amendment and that appellees were entitled to qualified immunity. She also argues the district court erred in setting aside the jury verdict, refusing to grant her equitable remedies, denying her attorney's fees and costs, and vacating the award of punitive damages. Appellees filed a cross-appeal in which they argue the district court erred in denying their motion for directed verdict. For the reasons discussed below, we hold appellant's speech was not protected by the First Amendment and therefore do not reach appellant's other arguments. Accordingly, we affirm the judgment of the district court and dismiss the cross-appeal.

JURISDICTION

The district court has subject matter jurisdiction of this 42 U.S.C. § 1983 civil rights action under 28 U.S.C. § 1343. The notice of appeal was timely filed pursuant to Fed. R. App. P. 4(a)(1), and this court has appellate jurisdiction under 28 U.S.C. § 1291.

FACTUAL BACKGROUND

Many of the facts are not disputed. Federal law requires that states provide a "free appropriate public education" for all children with disabilities. Education for All Handicapped Children Act, as amended, 20 U.S.C. § 1401 et seq. (Pub. L. No. 94–142, 89 Stat. 774) (hereinafter "the Act"). The Arkansas Department of Education (ADE) is the state agency responsible for implementing the Act and receives funds from the federal government. The ADE in turn requires local public school districts, either individually or jointly, to provide educational services to handicapped children.

Dawson Educational Service Cooperative (Dawson) is an "intermediate service unit" established pursuant to state law to provide educational services to handicapped children in several public school districts. The member school districts delegated their

responsibilities under the Act to Dawson. Appellant was employed by Dawson as the Early Childhood Coordinator in 1987 and was in charge of providing special education programs to pre-school students (3- to 5-year-olds) who were entitled to services under applicable federal guidelines.

One of the requirements for receiving federal funds is that the states must send reports to the United States Department of Education of the number (referred to as the "child count") of special education students between the ages of 3 and 21 receiving services and certify that the number is accurate and unduplicated. 34 C.F.R. § 300.50-.751. If the child count requirements are not met, states can lose federal funding for special education services. ADE policy required that the child count list the names of the students receiving special education services so that the names can be compared with lists of students in other federally and state-funded education programs to catch duplications.

Several of the school districts that were served by Dawson also wanted a copy of the child count reports, including the students' names, because they are legally responsible for providing the required education services to infants as well as pre-school students, kindergarten students and older students.

In November 1991 ADE instructed all Early Childhood Coordinators and local education agencies to include in the child count reports the name, date of birth, and disability category for all students in pre-school programs.[4] Appellant objected to the

---

[4]It should be noted that disclosure of the identity of special education students, especially very young special education students, is regarded as very controversial. Apparently, the standards for eligibility for pre-school special education services are more inclusive than those for regular school students, that is, more pre-school students are classified as special education students. Some educators and parents fear that classifying a student as a special education student can be stigmatizing because teachers and others will have lower expectations for that student and, as a result, may afford that student lesser or fewer educational opportunities.

inclusion of the students' names because she believed that federal regulations required that personal identification information be kept confidential, citing 34 C.F.R. § 99.30. Dr. James Ford, the director of Dawson, sent a letter to the parents of the students in the Dawson pre-school program advising them that, if they objected to the release of their child's name to the participating school district or to the ADE, they would have to withdraw their child from the program. The ADE advised Ford that this letter could deny handicapped children the "free appropriate public education" required by federal law because parents would withdraw their children from the pre-school program.

A parent filed a lawsuit in federal district court challenging the release of the pre-school students' names in the child count report. Ford and Porter were deposed in connection with that lawsuit. In January 1992 the district court dismissed the action, finding that the confidentiality of student information was reasonably protected and that the students' names could be included in the child count reports. A.B. ex rel. B.B. v. Arkansas Department of Education, No. LR–C–91–817, slip op. at 2-3 (E.D. Ark. Jan. 28, 1992) (A.B.) (findings of fact and order denying permanent injunction).

Appellant and Regina Weiner later spoke to a reporter from the Arkansas Democrat Gazette newspaper. A newspaper article reported that appellant was concerned that children could be harmed by the release of their names and identified appellant by her job title and her employer. According to appellees, appellant's opposition to the disclosure of student information made cooperation with school officials and ADE officials difficult and impaired appellant's ability to perform her job as the early childhood coordinator. This situation became urgent and on February 12, 1992, there was a meeting of the superintendents of the member school districts, Dr. Ford and appellant. According to appellant, the Dawson board was upset that she had talked to a reporter about the disclosure issue and cited to a transcript of the discussion at the meeting in which board member David Craig criticized her for talking to the newspaper reporter outside the courtroom and told her that she had to "compromise her philosophy" and "accept the [board's and ADE's] philosophy" or she would lose her

job because the board believed it was required to follow the ADE policy. Among other things, the superintendents were concerned that some districts had large numbers of special education students and other districts had relatively few special education students. According to appellees, this discrepancy prompted appellee Don Henson, the president of the Dawson board, to request that the ADE conduct an audit of the early childhood program.

The ADE conducted an audit and found that several students were receiving inappropriate services or were not eligible for special education services. As a result of this finding, the ADE conducted a more extensive audit and found what appellees described as serious non-compliance problems for years 1989, 1990 and 1991. According to appellees, because of this non-compliance, Dawson had to repay the ADE more than $120,000. Appellant alleges that the audit was inaccurate and had been conducted in a way that virtually destroyed her files and in complete disregard of student confidentiality.

Dawson decided that the non-compliance revealed by the ADE audit also indicated that appellant had not been adequately performing her job. In addition, appellant had refused to cooperate with the ADE audit team and had continued to maintain that disclosing the students' names in the child count reports violated student confidentiality. Dr. Ford recommended non-renewal of appellant's contract. The reasons for termination are disputed. According to a letter dated April 2, 1992, Dr. Ford recommended termination because of the ADE audit and the "adversarial relationship" between appellant and the Special Education Section of the ADE and the Early Childhood Advisory Committee members. However, Dr. Ford later "withdrew" the April 2 letter and in another letter stated that appellant was terminated because of the "mismanagement" of the early childhood program disclosed by the ADE audit. Following notice and a hearing, Dawson terminated her.

PROCEEDINGS IN DISTRICT COURT

In October 1992 appellant filed a 42 U.S.C. § 1983 civil rights action in federal district court against Dawson, Ford, Henson, and several other Dawson board members, alleging appellees violated her First Amendment rights by harassing and eventually terminating her from her job. She sought reinstatement and other injunctive relief, back pay, and compensatory and punitive damages. On February 15, 1995, the case was dismissed without prejudice, subject to re-filing within a year. On February 9, 1996, appellant re-filed the action, alleging the same claims plus a civil rights conspiracy in violation of 42 U.S.C. § 1985, a state law claim under the Arkansas Teacher Fair Dismissal Act, Ark. Code Ann. § 6–17–1501 et seq., and a state tort law claim of "outrage."

Appellees filed an answer asserting that they had acted in good faith in terminating appellant and were entitled to qualified immunity, that appellant was terminated for good cause and not in retaliation for her exercise of her First Amendment rights, and that she would have been terminated for poor performance as revealed by the ADE audit of the early childhood program. Appellees also sought dismissal of the civil rights conspiracy and outrage claims. The district court limited the case to only the claims raised in the initial complaint, holding the additional claims were barred by the statute of limitations.

The case was tried to a jury. At the close of appellant's case, the district court dismissed Dawson and its Board members and Dr. Ford in their official capacities because there was no evidence that Dawson had a policy, practice, or custom which violated appellant's constitutional rights. The district court also dismissed Dr. Ford and all the board members in their individual capacities, except Frank Chenault and appellees Craig and Henson. The jury returned a verdict finding in favor of Chenault on appellant's claims, but found in appellant's favor against appellees Henson and Craig. The jury awarded appellant compensatory damages in the amount of $150,000.

The jury also found that appellees Henson and Craig had acted in bad faith or with malice or with reckless or callous indifference to her constitutional rights and awarded appellant punitive damages in the amount of $200,000 against Henson and $100,000 against Craig.  Judgment was entered; appellees filed motions for judgment as a matter of law and appellant filed a motion for attorney's fees and costs.

On November 15, 1996, the district court granted judgment as a matter of law in favor of appellees.  The district court held that appellant's speech involved a matter of public concern but that the Pickering balance favored the public employer.  Slip op. at 3-6.  The district court specifically noted that the jury had found (in special interrogatory No. 3) that appellant's speech caused or could have caused disharmony or disruption in the workplace, impaired her working relationship with other employees, and impaired her ability to perform her job.  Id. at 2-3 & n.1.  The district court also held that appellees Henson and Craig were entitled to qualified immunity because "when [the Pickering] fact-intensive balancing test is at issue, the asserted First Amendment right can rarely be considered 'clearly established' for purposes of the Harlow qualified immunity standard."  Id. at 7-8, citing Grantham v. Trickey, 21 F.3d 289, 292 (8th Cir. 1994).  The district court also set aside the award of punitive damages and denied appellant's motions for equitable relief (reinstatement or front pay) and attorney's fees and costs.  Id. at 9-10.  The district court also held there was sufficient evidence to submit the issue of motivation for termination to the jury.  Id. at 9.  This appeal and cross-appeal followed.  We affirm the judgment of the district court and dismiss the cross-appeal.

MOTIONS TO SUPPLEMENT THE RECORD ON APPEAL

As a preliminary matter, appellees challenge the inclusion in the appendix by appellant of excerpts from a transcript of the tape-recording of the February 12, 1992, board meeting.  Appellees argue that the transcript was never admitted into evidence at trial and therefore is not properly part of the record on appeal.  The tape-recording

was admitted into evidence as Plaintiff's Ex. No. 38. The tape-recording had been misplaced; appellant's trial counsel believed he had returned it to appellant with the case file, but he later found it in his office. Appellees have moved to supplement the record on appeal to include the tape-recording. In addition, appellant has moved to supplement the record on appeal to include a copy of the judgment and findings of fact in the A.B. lawsuit. We grant the motions to supplement the record on appeal.

PROTECTED SPEECH-- PICKERING BALANCING TEST

Appellant argues the district court erred in holding that her speech was not protected by the First Amendment. She argues the district court erred in applying the Pickering balancing test to truthful speech on a matter of public concern. Pickering v. Board of Education, 391 U.S. 563 (1968) (Pickering). She also argues the district court erred in applying the Pickering balancing test because there was insufficient evidence that her protected speech caused any disruption or disharmony in the workplace. Appellees argue the district court did not err in applying the Pickering balancing test and that appellant's interest in free speech did not outweigh the government's interest as an employer in maintaining efficient operations.

"A public employee's speech enjoys limited protection under the First Amendment." Day v. Johnson, 119 F.3d 650, 657 (8th Cir. 1997) (citing Connick v. Myers, 461 U.S. 138, 154 (1983)), cert. denied, 118 S. Ct. 707 (1998).

> Courts addressing claims by public employees who contend that they have been discharged for exercising their right to free speech must employ a two-step inquiry. First, the court must determine whether the speech may be described as "speech on a matter of public concern." If so, the second step involves balancing the employee's right to free speech against the interests of the public employer. The focus is on striking "a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the [public employer] in

-10-

> promoting the efficiency of the public services it performs through its employees.  These two questions are matters of law for the court to resolve.

Kincade v. City of Blue Springs, 64 F.3d 389, 395 (8th Cir. 1995) (Kincade) (citations omitted), cert. denied, 517 U.S. 1166 (1996); see Pickering, 391 U.S. at 568; Bausworth v. Hazelwood School District, 986 F.2d 1197, 1198 (8th Cir. 1993).

The first step is not at issue:  appellant's speech about the confidentiality of student identification information addressed a matter of public concern.  Rather, what is at issue is the second step:  balancing appellant's right to free speech against the government's interests as an employer.

> Under the Pickering balancing test, the primary focus of the [public employer's] interest element is to determine whether the speech undermines "the effective functioning of the public employer's enterprise."  Factors relevant in conducting this test are whether the speech creates disharmony in the workplace, impedes the speaker's ability to perform his [or her] duties, or impairs working relationships with other employees.  The [public employer] bears the burden under the Pickering balancing test of establishing permissible grounds for [the employee's] discharge.

Kincade, 64 F.3d at 397 (citations omitted).

> This requires consideration of the following factors: (1) the need for harmony in the office or work place; (2) whether the government's responsibilities require a close working relationship to exist between [the employee] and co-workers when the speech in question has caused or could cause the relationship to deteriorate; (3) the time, manner, and place of the speech; (4) the context in which the dispute arose; (5) the degree of public interest in the speech; and (6) whether the

> speech impeded the employee's ability to perform his or her
> duties.

Lewis v. Harrison School District No. 1, 805 F.2d 310, 315 (8th Cir. 1986) (citing Bowman v. Pulaski County Special School District, 723 F.2d 640, 644 (8th Cir. 1983)), cert. denied, 482 U.S. 905 (1987).

First, contrary to appellant's argument, the Pickering balancing test is not applied only to false or reckless speech. Pickering itself involved both statements that were substantially correct and statements that were found to be false. 391 U.S. at 569 & n.2. Pickering rejected the public employer's argument that the First Amendment did not protect substantially correct but critical statements, id. at 570, but acknowledged in a footnote that the need for confidentiality or loyalty in some positions may be "so great that even completely correct public statements might furnish a permissible ground for dismissal." Id. n.3. In fact, the analysis in many public employee speech cases assumes both that the speech at issue is true and is on a matter of public concern, and then applies the Pickering balancing test to determine whether it is protected or unprotected speech. See, e.g., Kincade, 64 F.3d at 393-95, 398 (assuming substance of public employee's speech was as he claimed; Pickering balancing test held properly not applied because city completely failed to provide any evidence that employee's speech was disruptive); Roberts v. Van Buren Public Schools, 773 F.2d 949, 956 (8th Cir. 1985) (Roberts) (assuming substance of teachers' grievances was correct; one grievance held unprotected speech because it involved supervisor-employee relationship and another grievance held unprotected speech because it amounted to insubordination).

The district court permissibly submitted underlying factual disputes to the jury through special interrogatory verdicts. Roberts, 773 F.2d at 954 (citing cases in which jury decided whether speech created disharmony between employee and immediate supervisor). The jury found that appellant's speech (1) caused or could have caused

disharmony and disruption in the work place, (2) impaired appellant's working relationship with other employees, and (3) impeded her ability to perform her duties.

Applying the Pickering balancing factors in light of the jury's findings of fact, the district court found that appellant was required to work closely with other Dawson employees, the LEA supervisors in the individual school districts, and the ADE. Slip op. at 4. The district court also found that the success of the early childhood program depended upon the support of the ADE and on appellant's ability to cooperate and communicate with ADE officials. Appellant admitted that her relationship with the LEA supervisors and with ADE officials was strained. Id. at 5.

The time, place, and manner in which appellant exercised her free speech rights favored appellees. Dawson had already decided that the release of student identification information in the child count reports complied with federal regulations and ADE policy. Prior to Judge Woods's decision in the A.B. lawsuit, a genuine dispute may have existed as to the confidentiality requirements of the student identification information. Judge Woods's decision that Dawson was not violating the confidentiality of its students by releasing the names to the ADE thereby ended any genuine dispute on that issue. Immediately following Judge Woods's decision in the A.B. lawsuit, however, appellant talked to a newspaper reporter and took a position contrary to that taken by Dawson and contrary to the A.B. decision. When her comments were reported in the newspaper, she was identified as the early childhood coordinator for Dawson. The district court found that appellant's speech could undermine Dawson's authority and disrupt its operations. Id.

"The concerns underlying the Pickering balance suggest that a government as an employer has a legitimate interest in achieving compliance with decisions that, while once open to dispute and discussion, have been made through proper channels." Roberts, 773 F.2d at 956. "Employee acts of insubordination may tip the balancing process in favor of the employer's interests in the efficient promotion of its services."

Barnard v. Jackson County, 43 F.3d 1218, 1224 (8th Cir.), cert. denied, 516 U.S. 808 (1995). Appellant was entitled to dispute the validity of the release of confidential information to the LEA supervisors and the ADE. Once Dawson decided to release the information, and especially after the A.B. decision, Dawson, as an employer, had a legitimate interest in appellant's compliance with the release of the requested information to the member school districts and the ADE. Appellant, however, continued to dispute the validity of the A.B. decision, failed to cooperate with the LEA supervisors, refused to attend the LEA advisory committee meetings, continued to challenge ADE policy, and made Dawson's attempted compliance with court orders extremely difficult.

We have also considered appellant's personal motive in talking to the newspaper reporter following the A.B. decision regarding her potential testimony in the A.B. lawsuit. Personal motives may be factored into the Pickering balance test. "[I]nsofar as self-interest is found to have motivated public-employee speech, the employee's expression is entitled to less weight in the Pickering balance than speech on matters of public concern intended to serve the public interest." Barnard v. Jackson County, 43 F.3d at 1226 (public employee apparently served as self-appointed FBI informant), citing O'Connor v. Steeves, 994 F.2d 905, 915 (1st Cir.), cert. denied, 510 U.S. 1024 (1993). There was evidence introduced at trial that appellant may have taken her position on the confidentiality issue and participated in the A.B. lawsuit in part because she was concerned about her records and files at Dawson and believed that their release would disclose that the early childhood program was out of compliance and that many children were being improperly served.

The district court also found that, although appellant's speech involved a matter of public concern, "a lack of widespread public interest in the [speech]" weighed against appellant's interest. Slip op. at 6. Compare Lewis v. Harrison School District, 805 F.2d at 316 (high degree of public interest in transfer of teacher); Bowman v. Pulaski County Special School District, 723 F.2d at 644 (high degree of public interest

-14-

in possibility of physical mistreatment of students in public schools); cf. Barnard v. Jackson County, 43 F.3d at 1225 (information alleging abuse of public office represents public benefit entitled to great weight in Pickering balance).

Finally, we consider the effect the speech had on appellant's ability to perform her duties and the efficiency of the workplace. This is the most important factor because, as noted above, "[t]he primary focus in applying the Pickering [balancing] test is to determine whether the speech undermines 'the effective functioning of the public employer's enterprise.'" Barnard v. Jackson County, 43 F.3d at 1224, citing Rankin v. McPherson, 483 U.S. 378, 388 (1987). There was evidence that appellant was "compulsive" on the issue of the confidentiality of student identification information and that this compulsion impeded her ability to perform her duties, slip op. at 6, and undermined the effective operation of the workplace.

We agree with the district court that the government's interest as an employer in the effective functioning of the workplace outweighed appellant's interest in speaking on the issue of the confidentiality of student identification information. We hold as a matter of law that appellant's speech was unprotected by the First Amendment and thus her termination did not violate the First Amendment.

Because of our conclusion, we need not determine whether appellees were entitled to qualified immunity. We also need not decide whether the district court erred in denying appellees' motion for directed verdict. Cf. Metropolitan Life Insurance Co. v. Golden Triangle, 121 F.3d 351, 354 (8th Cir. 1997) (holding denial of summary judgment is interlocutory in nature and not appealable after full trial on the merits; judgment on the verdict supersedes earlier summary judgment proceedings).

Accordingly, the judgment of the district court is affirmed. The cross-appeal is dismissed. The motions to supplement the record filed by appellant and appellees are granted.

A true copy.

ATTEST:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.