# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-2272

_____

|  |  |  |
|---|---|---|
| Jacquelyn Fales, Dr.; Mary Ann Kahmann; Eileen Scarborough, | * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * | Appeal from the United States District Court for the Western District of Arkansas. <br><br> [PUBLISHED] |
| Appellees, | | |
| v. | | |
| Lynn Garst, | | |
| Appellant. | | |

_____

Submitted:  June 15, 2000
Filed:  January 2, 2001

_____

Before LOKEN, ROSS, and HANSEN, Circuit Judges.

_____

PER CURIAM.

Lynn Garst appeals from the district court's denial of his motion for summary judgment, in which he had asserted a qualified immunity defense to this civil rights action.  We reverse.

The plaintiffs are three teachers at West Fork Middle School (West Fork) where Garst has been principal since 1994.  Over a period of four years, tension arose between Garst and the three teachers over the needs of special education students.  As a result, the plaintiffs complained about Garst's administrative decisions and actions

to his superiors and others, including the media. The plaintiffs later filed this 42 U.S.C. § 1983 action, alleging that Garst had violated their rights to freedom of speech and association under the First Amendment by instructing them not to discuss incidents regarding special education students at West Fork and their rights to equal protection under the Fourteenth Amendment by lowering their evaluations. They requested injunctive and declaratory relief, and damages. Following submissions by all the parties, the district court summarily denied Garst's motion for summary judgment.

A denial of summary judgment on the grounds of qualified immunity may be reviewed on interlocutory appeal when the issue presented is whether the facts alleged support a claim that a defendant violated clearly established law. See Pace v. City of Des Moines, 201 F.3d 1050, 1052 (8th Cir. 2000). When an official claims entitlement to qualified immunity, we first ask whether the plaintiffs have alleged a violation of constitutional magnitude. See Weiler v. Purkett, 137 F.3d 1047, 1050 (8th Cir. 1998) (en banc).

Turning first to the equal protection claim, we conclude that the plaintiffs failed to offer specific evidence of incidents in which they were treated differently than others who were similarly situated. See Klinger v. Department of Corr., 31 F.3d 727, 731 (8th Cir. 1994) (absent threshold showing that plaintiff is similarly situated to those who allegedly receive favorable treatment, plaintiff does not have viable equal protection claim), cert. denied, 513 U.S. 1185 (1995).

As to the alleged First Amendment violations, the initial issue--whether the speech of a public school teacher is constitutionally protected expression--is determined by inquiring whether the speech may be described as "speech on a matter of public concern." If so, the court balances the teacher's interest in speaking against her employer's interest in promoting the efficiency of the public service it performs through its employees. See Pickering v. Board of Educ., 391 U.S. 563, 568 (1968); Kincade v. City of Blue Springs, 64 F.3d 389, 395 (8th Cir. 1995), cert. denied, 517 U.S. 1166

(1996). "These two questions are matters of law for the court to resolve." See Kincade, 64 F.3d at 395.

The plaintiffs' complaints, which centered around the proper care and education of special education students, touched upon matters of public concern. See id. at 396 (employee's speech touches upon matter of public concern when it is a matter of political, social, or other concern to community, but not when employee speaks upon matters of only personal interest); Bowman v. Pulaski Co. Special Sch. Dist., 723 F.2d 640, 644 (8th Cir. 1983) (question of what constitutes proper care and education of children is area of public concern).

However, in applying Pickering's balancing test, we conclude that the undisputed facts show that the plaintiffs' speech resulted in school factions and disharmony among their coworkers and negatively impacted Garst's interest in efficiently administering the middle school. See Kincade, 64 F.3d at 397 (relevant factors in conducting test are whether speech creates disharmony in workplace, impedes speaker's ability to perform duties, or impairs working relationships with other employees). After one newspaper article was published, a West Fork teacher confronted Kahmann and told her that she should not be talking to the newspaper. One faculty member verbally accosted her several times, and another told her she should leave West Fork. Scarborough and Fales were engaged in an ongoing battle with the fifth-grade teachers concerning special education issues. The school climate led the district's superintendent to recruit a consultant to mediate the issues. The consultant's efforts did not resolve the situation; her meeting with the staff merely revealed that the faculty was divided and the problems were serious. Ultimately, the middle school became polarized, dividing into pro- and anti-Garst groups. Unlike the situation in Belk v. City of Eldon, 228 F.3d 872, 881 (8th Cir. 2000), where there was a question of whether the speech itself caused the workplace turmoil, here it is beyond peradventure that the plaintiffs' speech caused the school upheaval. Because we believe that the teachers' interest in speaking on these matters was outweighed by the

interest of efficient administration of the middle school, we conclude the district court erred in not finding Garst was entitled to qualified immunity.

Accordingly, we reverse the judgment of the district court and remand for entry of an order granting Garst's motion for summary judgment.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-4-